FILED

MAY 11 2006

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>EDWARD KILE,<br><br>                      Debtor.<br><br>M. KENNETH MUDGE and LEORA MUDGE, TRUSTEE OF THE MUDGE TRUST DATED MAY 29, 2002, AS TO AN UNDIVIDED 48.6322% INTEREST; LINCOLN TRUST COMPANY, TRUSTEE FBO M. KENNETH MUDGE AS TO AN UNDIVIDED 21.2766%; and FEDERAL HOME LOANS CORPORATION AS TO AN UNDIVIDED 30.0912% INTEREST,<br><br>                      Plaintiffs,<br><br>vs.<br><br>EDWARD KILE and ROBYN KILE, husband and wife; RIBSY PRODUCTIONS, LLC, a California limited liability company; STATEWIDE GROUP, INC., dba STATEWIDE FORECLOSURE SERVICES,<br><br>                      Defendants. | Chapter 7<br><br>No. 4-04-bk-02237-JMM<br><br>Adv. No. 4-05-ap-00009-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**TRUSTEE'S INTERPLEADER**<br><br>**DISTRIBUTION AND SETTLEMENT**<br><br>**PROPOSAL (MUDGE CLAIM ONLY)**<br><br>(Opinion to Post) |

        The court has before it the chapter 7 Trustee's "Motion to Approve a Proposed Disposition of Interplead Funds," which was filed in this adversary proceeding on December 9, 2005 (Dkt. 58). The court has had this matter under advisement, in order to allow the parties to brief their respective positions,

h:\wp\orders\

and for the court to consider the applicable law. Having now done so, the court can rule and state its reasons therefor.

## BACKGROUND

### A. The Foreclosure, Chapter 11, and the Debtor's Litigation over the Trustee's Sale (Adv. 4-04-ap-61)

A foreclosure sale of Solana Beach, California residential real estate occurred on March 29, 2004. The sale was initiated by FHL ("Mudge Loan").[1] Mark and Carol Campbell were the successful bidders at that sale, paying $410,000 for the property. The Trustee's Deed to the Campbells was recorded on March 30, 2004.

In connection with that sale, the Mudge Loan was fully paid, and $274,287.10 in <u>excess</u> proceeds were generated. The Campbells thereafter obtained a judgment for $38,682.00 in connection with their efforts to gain possession of the property. That sum has now been acknowledged to be an appropriate claim against the excess proceeds at issue here, and it has been paid with interest by the Trustee to the Campbells. The amount paid to them was $42,788.57. (See Order of December 14, 2005, Dkt. 62.)

On May 7, 2004, the Debtor filed a chapter 11 proceeding, in Arizona, and shortly thereafter he commenced litigation (Adv. 4-04-ap-61) over whether the foreclosure sale was valid. The court ruled against the Debtor on November 8, 2004 (Dkt. 58). A final judgment was entered on November 30, 2004 (Dkt. 66).

On June 14, 2005, the Debtor's chapter 11 case was converted to one under chapter 7, and a Trustee, Dan Dominguez, was appointed.

---

[1] FHL is a shorthand term for Federal Home Loans Corporation.

## B. The Excess Proceeds Litigation

### (Adv. 4-05-ap-9)

On January 12, 2005, five months before the case was converted to chapter 7, litigation was commenced by Mudge Loan in order to determine which parties were entitled to the <u>excess</u> foreclosure sale proceeds of $274,287.10. The chapter 7 Trustee later succeeded to the Debtor's position as the real party in interest when the case converted to chapter 7 on June 14, 2005.

Later in the "excess proceeds litigation," the court authorized distribution to be made, without objection by any party, to the following parties:

| | | | | |
|---|---|---|---|---|
| 12/09/05 | Statewide Foreclosure Services | $ 9,443.17 | (Order, Dkt. 60.) |
| 12/14/05 | Campbells | <u>$42,788.57</u> | (Order, Dkt. 62.) |
| **Total** | | $52,231.74 | |

Those parties have no further claims in this litigation.

Thus, at the present time, the Trustee holds approximately $222,056 for distribution to creditors, subject to other claims against that fund. At the current time, the only other party actually claiming an interest therein is the Mudge Loan. It seeks a "carve-out," from the excess funds pool, of approximately $43,641 for attorneys' fees and costs incurred, post-bankruptcy, for its having had to defend the Debtor's earlier action (Adv. 4-04-ap-61), which questioned the validity of Mudge's foreclosure sale. (See Adv. 4-04-ap-61, Dkt. 62.) It also seeks $26,610.50 for initiating the instant "excess proceeds litigation" (Dkt. 65).[2] In total, Mudge Loan seeks to be paid $70,251.50.

---

[2] This figure includes $864.00 requested by another firm known as Engel & Miller. The total sum also includes additional fees and costs of $7,735.50 and $948.79 related the yet unresolved appeal of Adv. 04-61.

h:\wp\orders\    3

The Trustee has settled all issues with the other claimants to the fund, and only the Mudge claim remains to be decided.

### C. The Mudge Loan Claim

#### 1. Adv. 4-04-ap-61

As noted above, Mudge Loan's claim against the interpleaded funds–which generated its objection to the Trustee's proposed settlement and distribution--is principally rooted in the post-foreclosure attorneys' fees which were generated as a result of the Debtor's aborted legal effort to invalidate the Mudge foreclosure sale (Adv. 4-04-ap-61).

Mudge's first effort to be awarded its fees came after the court had ruled in its favor on November 8, 2004 (Adv. 4-04-ap-61, Dkt. 58). In its Memorandum Decision, the court requested that any party claiming fees and costs were to present them promptly (Adv. 4-04-ap-61, Dkt. 58). However, Mudge reacted too slowly, filing for fees on November 29, 2004 (Adv. 4-04-ap-61, Dkt. 62), only a day before the court rendered final judgment on November 30, 2004. Because Mudge's request came too late, the court rejected it on grounds of untimeliness (Adv. 4-04-ap-61, Dkt. 80).

Mudge then appealed that fee decision, and it is currently pending before the United States District Court, Civ. No. 05-685-TUC-FRZ.

#### 2. Objection to Trustee's Settlement and Distribution and Its Relation to the "Excess Claims" Litigation (Adv. 4-05-ap-0009)

Now, coming at the problem from another angle, Mudge has objected to the Trustee's proposed disposition and settlement, wherein the Trustee seeks to compromise and pay out the foreclosure sale's remaining "excess proceeds" of approximately $222,056.

Case 4:05-ap-00009-JMM    Doc 70    Filed 05/11/06    Entered 05/11/06 15:10:16    Desc
Main Document    Page 4 of 10

Mudge maintains that it has a <u>secured</u> interest in such monies, and contends that, as a secured creditor, it is entitled to its reasonable fees for defending its promissory note and deed of trust stemming from the suit which questioned the validity of its foreclosure sale (Adv. 4-04-ap-61), as well as 11 U.S.C. § 506(b) of the Bankruptcy Code.[3]

Thus, Mudge has raised an interesting issue which requires additional legal analysis, to wit:

> Does a secured creditor's real property security interest continue in "excess proceeds," which were generated after its foreclosure sale, in order to satisfy any later, and then unknown and unanticipated, attorneys' fees and costs which may be incurred in a post-foreclosure challenge to the validity of such sale?

Put another way, the issue could be framed as follows:

> Does a lien, secured by real estate, continue in any remaining excess proceeds, after the note secured by the lien has been fully paid?

These questions are governed by California law. This is because the real property is in California, the recorded deed of trust was recorded in California, and the foreclosure proceeding took place in California pursuant to California deed of trust statutes.

## THE LEGAL ANALYSIS

### A. The Basics

A lien only exists if it is supported by an underlying debt. *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601 (Cal. 1995); *Lewis v. Booth*, 44 P.2d 560 (Cal. 1935); *Hill v. Favor*, 52 Ariz. 561,

---

[3] 11 U.S.C. § 506(b) provides: To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.

84 P.2d 575 (Ariz. 1938). The lien interest secures the debt with collateral, which is property that the creditors may look to, and sell, in order to repay the debt if the debtor defaults on the promise to pay according to the note's terms. West's Ann.Cal.Com.Code § 9601.

In California, a statutory method for creating a lien upon real property involves the granting and recording of a deed of trust. West's Ann.Cal.Civ.Code § 2898.[4] In such a legal setting, the owner of the property conveys a power of sale to a trustee.[5] The trustee then merely holds the power until notified by the beneficiary (the party to whom the debt is owed) that the obligation has either been satisfied by payment (in which case the deed of trust is released, or "reconveyed") or that a default has occurred which requires the trustee to sell the encumbered land.

In the instant case, the Mudge Loan fell into default, and after some delay caused by the Debtor's transfers and an associated bankruptcy, the loan was eventually foreclosed by a trustee's sale on March 29, 2004.[6] At the trustee's sale, Mark and Carol Campbell were the successful bidders, paying $410,000 for the property. (See Ex. B to Dkt. 68.) The Trustee's Deed indicates that the Mudge Loan balance was approximately $135,612.90 (Ex. B to Dkt. 68).

The Debtor had obligated himself on October 26, 2000, to pay Mudge an original principal amount of $164,500, plus interest, pursuant to a standard real property loan terms. After the trustee's sale proceeds, in an amount necessary to repay Mudge, were transmitted to Mudge, Mudge or its agent, Statewide Foreclosure Services, marked the promissory note "paid," and the deed of trust was released from the property. The Campbells now own the Solana Beach property free and clear of any interest of the Mudge Loan. (See Ex. "A" to Mudge Brief, Dkt. 68; Mudge Brief at 3, lines 14-17). Similarly, the deed of trust was marked "paid" by Statewide, the Mudge trustee. (See Ex. C to Mudge Brief, Dkt 68; Mudge Brief at 3, lines 22-23). Thereafter, Mudge never brought suit, nor asked the bankruptcy court's

---

[4] Arizona's version is ARIZ. REV. STAT. § 33-805.

[5] Arizona's version is ARIZ. REV. STAT. § 33-807.

[6] For a more extensive recitation of the convoluted facts and associated bankruptcy case in San Diego, California, see this court's Memorandum Decision in Adv. 4-04-ap-61, Dkt. 58.

Case 4:05-ap-00009-JMM   Doc 70   Filed 05/11/06   Entered 05/11/06 15:10:16   Desc
Main Document    Page 6 of 10

permission to file suit for any alleged deficiency relating to any claimed underpayment of its lien, within 90 days after the sale occurred, as required by law. West's Ann.Cal.C.C.P. § 580a.

Mudge has never contended, nor could it, that it was not paid in full, as of the date of the trustee's sale. It was paid all of its principal, interest, and costs up to the date of payment. Nor has Mudge contended that it still holds a lien which could yet be enforced against the Solana Beach property now owned by the Campbells. Indeed, any such contention would no doubt come as shock to the Campbells, who paid $410,000 for property upon which the Mudge's Loan balance was only approximately $135,612.90 (see Trustee's Deed Upon Sale, Ex. B to Dkt. 68).

In support of its contention that it is entitled to a slice of the excess proceeds, Mudge argues that California courts have awarded attorneys' fees to a lender which was required to defend an action challenging the validity of a previously conducted trustee's sale. However, the cases cited by Mudge reflect <u>general</u> <u>principles</u> of entitlement to fees to a prevailing party in a <u>contract</u> dispute, or the application of offset rules not involving a third party (such as a bankruptcy trustee).

Those cases, however, do <u>not</u> stand for the principle that a <u>lien</u>, once the original obligation is satisfied, can be resurrected and then attach to excess proceeds in which other creditors, or even the debtor, have gained superior interests. Indeed, California's statute requires that, after the deed of trust lienholder has been fully paid, any excess proceeds shall be distributed in the priority established by law. See, West's Ann.Cal.Civ.Code § 1500; West's Ann.Cal.Civ.Code § 1473.[7]

What Mudge misses in its argument is that once a debt is paid, the security for the obligation no longer exists. Unless the security documents contain some type of "future advances" clause, or the property otherwise secures some kind of revolving debt relationship, when the single debt is paid, there remains nothing to secure. In a mortgage loan transaction involving a single parcel of real estate, there is no authority to assert that a lien interest continues to exist in perpetuity. Mudge has made no such assertion, the court was unable to find any authority therefor, and the premise is inherently

---

[7] Arizona's counterpart is ARIZ. REV. STAT. § 33-812.

illogical.

Here, there is no question but that, after the trustee's sale, the Mudge Loan was paid in full and the promissory note, in the possession of the trustee, was marked "paid." Marked or not, payment extinguished the debt, as between the parties thereto.[8]

The Mudge Loan arguments also completely ignore the importance of California's deficiency statute, which requires a lender claiming to have a deficiency to file suit within 90 days after the trustee's sale, or be forever barred. West's Ann.Cal.C.C.P. § 580a.[9] *Cadle Co. II v. Harvey*, 83 Cal. App. 4th 927, 100 Cal. Rptr.2d 150 (Cal. App. 4 Dist. 2000); *Brown v. Jensen*, 259 P.2d 425 (Cal. 1953).

Mudge could perhaps contend that the filing of the instant bankruptcy case, filed 39 days after the trustee's sale, tolled the 90-day period. However, Mudge has not raised this issue, but if it had, its plea would have failed, because Mudge never sought stay relief for permission to file such a suit, and thus waived the opportunity to liquidate any deficiency claim which it might have. Moreover, a review of the claims register in this case reflects that Mudge Loan has never filed a claim for any deficiency, and thus is now time-barred from doing so. That time expired March 2, 2006 (see Dkt. 113, Administrative Case 4-04-bk-02237-JMM).

Finally, as to Mudge's contention that the initiation of the instant litigation conferred a benefit to the bankruptcy estate, the court disagrees. First, the case converted to chapter 7 five months after the instant litigation was commenced. The chapter 7 Trustee then assumed the primary mantle for shepherding the assets and was astute enough to immediately lay claim to the $275,000 in excess proceeds. Second, the filing of the litigation only joined the issues between the date of its filing on

---

[8] Whether the note was marked "paid" or not is irrelevant to this case. As between the parties, Mudge and the debtor, no further debt obligation existed. The significance of writing "paid" across the note is important from the <u>debtor's</u> perspective, since a "clean" note could theoretically find its way into the stream of commerce, and be acquired by a holder in due course. In that event, the clean instrument – whether paid or not – would continue to be enforceable against the debtor. <u>See, e.g.</u> ARIZ. REV. STAT,. § 47-3302 (setting forth requirements of a holder in due course).

[9] Arizona's counterpart is ARIZ. REV. STAT. § 33-814.

h:\wp\orders\ 8

Case 4:05-ap-00009-JMM    Doc 70    Filed 05/11/06    Entered 05/11/06 15:10:16    Desc
Main Document    Page 8 of 10

January 12, 2005 and the date of the conversion to chapter 7 on June 14, 2005. There were no recoveries for the benefit of creditors made by Mudge Loan. Thus, the court finds, concludes, and holds that there was no "substantial contribution" rendered to the estate, either as a matter of fact or law. 11 U.S.C. § 503(b)(3)(D). Merely claiming an entitlement to proceeds does not rise to the level of a "substantial contribution" to an estate. Pursuing one's own interests is neither substantial nor a contribution to an estate which is deserving of compensation.

## CONCLUSION

Based on the foregoing, the court finds, concludes, and rules that Mudge has no claim to the "excess sale proceeds" held by the Trustee, and that, therefore, its objection to the Trustee's settlement--on such ground--is overruled. Other rulings will be forthcoming on attorney Waterman's claim for attorneys' fees, and once that issue is settled, as to whether the compromise proposed by the trustee is worthy of approval. Until all issues surrounding the excess proceeds and the compromise are judicially resolved, no formal, final order will be entered.

DATED: May 11, 2006.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below this 11th day of May, 2006, upon:

Matthew R.K. Waterman
Waterman & Waterman, P.C.
33 North Stone Avenue, Suite 2020
Tucson, AZ 85701
Email mrkw@watermanlaw.com
Attorneys for Debtor

Matthew R.K. Waterman
Waterman & Waterman, P.C.
33 North Stone Avenue, Suite 2020
Tucson, AZ 85701
Email mrkw@watermanlaw.com
Attorneys for Debtor

| | |
|---|---|
| Scott B. Cohen<br>Heather M. Fox<br>Sacks Tierney P.A.<br>4250 N. Drinkwater Blvd., 4th Floor<br>Tucson, AZ 85251-3693<br>Email scott.cohen@sackstierney.com<br>Email heather.fox@sackstierney.com | Timothy J. Silverman<br>Holly Nolan<br>Solomon Grindle Silverman & Spinella<br>12651 High Bluff Drive, Suite 300<br>San Diego, CA 92130<br>Email tim@sgsslaw.com<br>Email holly@sgsslaw.com |
| Steven M. Cox<br>Waterfall Economidis Caldwell Hanshaw &<br>Villamana, P.C.<br>5210 E. Williams Cir., #800<br>Tucson, AZ 85711<br>Email smcox@wechv.com | Scott D. Gibson<br>Gibson, Nakamura, & Decker, PLLC<br>2941 N. Swan Rd., Suite 101<br>Tucson, AZ 85712-2343<br>Email: sgibson@gnglaw.com |
| Jack I. Mann<br>Gary M. Orlansky<br>Law Office of Jack I. Mann<br>1901 First Avenue, Suite 405<br>San Diego, CA 92101<br>Attorneys for Statewide | Larry Lee Watson<br>Office of the United States Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003-1706<br>Email larry.watson@usdoj.gov |

By /s/ M.B. Thompson
     Judicial Assistant

h:\wp\orders\                                   10

Case 4:05-ap-00009-JMM   Doc 70   Filed 05/11/06   Entered 05/11/06 15:10:16   Desc
Main Document    Page 10 of 10